# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

ALICIA S. TIDWELL, )
)
Plaintiff, )
)
v. ) Case No. CIV-08-115-KEW
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
)
Defendant. )

## OPINION AND ORDER

Plaintiff Alicia S. Tidwell (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. See, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. See generally, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on July 6, 1966 and was 41 years old at the time of the ALJ's decision. She completed her high school education with learning disability classes. Claimant's engaged in past relevant work as a nurse's aide and a cook. Claimant alleges an inability to work beginning October 5, 2004 due to depression, anxiety, psychosis, paranoid schizophrenia, suicidal thoughts and attempts, homicidal thoughts, auditory and visual hallucinations, and an inability to concentrate.

3

## Procedural History

On November 22, 2004, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, et seq.) and supplemental security income under Title XVI of the Social Security Act (42 U.S.C. § 1381, et seq.). Claimant's application for benefits was denied initially and upon reconsideration. On October 16, 2006, Claimant appeared at a hearing before ALJ Lantz McClain in Tulsa, Oklahoma. By decision dated September 26, 2007, the ALJ found Claimant was not disabled at any time through the date of the decision. On February 26, 2008, the Appeals Council denied Claimant's request for review. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found Claimant had a substance use disorder which, if discontinued, would result in a residual functional capacity ("RFC") sufficient to perform a significant number of jobs in the national economy.

## Errors Alleged for Review

Claimant asserts the ALJ committed error requiring reversal in (1) finding Claimant's record of substance abuse was material to

his disability determination; and (2) ignoring vital probative evidence which contradicted his findings in his decision to deny benefits.

**Consideration of Claimant's Substance Abuse**

Claimant contends the ALJ improperly determined she did not suffer from a disability absent Claimant's substance abuse. Claimant first sought treatment for depression with suicidal and homicidal thoughts at the Green Country Behavioral Health Services Crisis Unit on October 5, 2004. Claimant was attended by Dr. George Jennings. Dr. Jennings diagnosed Claimant with depression with psychotic features and polysubstance abuse. At the time of admission, Claimant was experiencing auditory and visual hallucinations which instructed her to kill herself. Claimant was discharged on October 22, 2004. (Tr. 179-182).

Claimant was re-evaluated by Dr. Jennings on January 3, 2005. He maintained his assessment of Claimant as major depression with psychotic features. Claimant reported her depression was "doing well" but that she still experienced some daytime anxiety and had difficulty sleeping. (Tr. 137).

On February 5, 2005, a consultative mental status examination was performed on Claimant by Dr. Beth Teegarden. Claimant reported seeing "little demons" since she was 5 years old. She also experienced auditory hallucinations, hearing voices that made

5

derogatory statements to her and directed her to kill herself and stab her husband. Claimant reported that she stabbed her husband in October of 2004 in three places and cut herself, which prompted her admission to Green Country. Claimant also thought the police were following her all of the time.

Claimant rated her mood at 4 out of 10. She did not sleep well and her energy was low. Claimant enjoys her grandson but no longer has interest in cleaning her house. She washes her hands constantly, has poor concentration, and experiences anxiety attacks while in the car. (Tr. 112).

Claimant also reported a long-standing history of polysubstance dependence. She started using marijuana and alcohol when she was 15 years old. She has used marijuana daily since then and continues its use but cut down to three joints a day because of the expense. Claimant used alcohol daily and was drinking up to 30 beers per day from her early 20's until October of 2004 when she quit alcohol use. She used methamphetamine intravenously on a daily basis for three years up until August of 2004. Claimant also reported a history of abusing Lortab, Valium, and Xanax. She stated she would still take the medication if she could afford it. (Tr. 113).

Dr. Teegarden diagnosed Claimant at Axis I: Psychosis NOS, substance-induced vs. schizophrenia, Poly-substance dependence to

include alcohol, marijuana, methamphetamine, opiates, and hypnotics, Mood disorder NOS, substance-induced vs. major depression, Panic disorder with agoraphobia, Obsessive-compulsive disorder; Axis II: Deferred; Axis III: Recent negative HIV and hepatitis C tests; Axis IV: Financial, occupational, social, primary support. (Tr. 114).

Dr. Teegarden concluded that Claimant "was obviously very sick and psychotic. She is not able to work at this time." Dr. Teegarden was not sure whether her psychotic symptoms started in childhood or was secondary to her drug dependency. However, she noted Claimant had "poor insight" into her chemical dependency and could not handle her own finances because she would use the money to buy marijuana. (Tr. 115).

On February 8, 2005, Claimant again saw Dr. Jennings. She told him she was out of her depression medication and was feeling a little more depressed and could not sleep. Dr. Jennings maintained his diagnosis of major depression with psychotic features. (Tr. 136).

On February 10, 2005, Claimant reported to Green Country that she was still seeing little demons. She reported using marijuana to "help calm her down." She was easily agitated and, at times, dangerous. Claimant reported not trusting anyone and would not participate in group therapy. (Tr. 135).

A Psychiatric Review Technique form was completed by Dr. Tom Shadid on Claimant. He found Claimant suffered from schizophrenic, paranoid and other psychotic disorders as well as substance addiction disorders. He determined Claimant met Listing 12.03. (Tr. 117). Dr. Shadid concluded Claimant had moderate limitations in her activities of daily living and marked limitations in maintaining social functioning, maintaining concentration, persistence, or pace. (Tr. 127).

Dr. Jennings continued treating Claimant with medication in follow-up visits on March 8, 2005 and September 29, 2005. (Tr. 133-134, 174). He continued his diagnosis of major depression with psychotic features and added a bipolar component. (Tr. 174).

A Psychiatric Review Technique form was completed on Claimant by Dr. Carolyn Goodrich. She found Claimant suffered from schizophrenic, paranoid and other psychotic disorders as well as substance addiction disorders. (Tr. 139). She also found Claimant experienced moderate limitations in her activities of daily living, maintaining social functioning, maintaining concentration, persistence, or pace and had one or two episodes of decompensation of extended duration. (Tr. 149).

Dr. Goodrich also completed a Mental Residual Functional Capacity Assessment form on Claimant on June 15, 2005. She concluded Claimant had marked limitations in her ability to

understand and remember detailed instructions and her ability to carry out detailed instructions. (Tr. 153). She found Claimant could perform "simple routine tasks with usual supervision. She can relate to others for work matters, but not the general public. She can adapt to a work situation." (Tr. 155).

Claimant reported to Dr. Jennings in November of 2005 that she began hearing voices again and was having trouble sleeping. Claimant had missed her prior appointment and had run out of her medication. Dr. Jennings renewed her prescriptions. (Tr. 173).

On September 28, 2006, Dr. Jennings completed a Mental Medical Source Statement with regard to Claimant. He found moderate limitations in Claimant's ability to remember locations and work-like procedures, ability to understand and remember very short and simple instructions, ability to maintain attention and concentration for extended periods, ability to sustain an ordinary routine without special supervision, ability to make simple work-related decisions, ability to interact appropriately with the general public, ability to ask simple questions or request assistance, ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, ability to be aware of normal hazards and take appropriate precautions, ability to travel to unfamiliar places or use public transportation, and ability to set realistic goals or make plans

9

independently of others.

Dr. Jennings found marked limitations on Claimant's ability to understand and remember detailed instructions, ability to carry out detailed instructions, ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, ability to work in coordination with or proximity to others without being distracted by them, ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, ability to accept instructions and respond appropriately to criticism from supervisors, ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and ability to respond appropriately to changes in the work setting. (Tr. 174-177).

In his decision, the ALJ found Claimant suffered from the severe impairments of depression and polysubstance abuse. Despite Dr. Shadid's other findings, the ALJ chose to concur with his opinion only insofar as Dr. Shadid found Claimant was unable to perform work activity on a sustained basis when using drugs and/or alcohol. (Tr. 18). The ALJ found Claimant was unable to perform her past relevant work. (Tr. 19). He recognized the vocational expert's testimony that based upon Claimant's impairments,

including her substance abuse disorder, no jobs existed in the economy Claimant could perform. (Tr. 20). However, he also concluded that, while Claimant's depression would still exist absent a cessation of drug and/or alcohol use, Claimant would not meet a listing and would retain the RFC to perform a full range of work at all exertional levels, with the non-exertional limitation that she would be limited to simple, repetitive tasks with only incidental contact with the public. (Tr. 20-21).

The Social Security Act provides that an individual would not be considered disabled if alcoholism or drug addiction were a "contributing factor material to the Commissioner's determination that the individual is disabled." Salazar v. Barnhart, 468 F.3d 615, 622-23 (10th Cir. 2006). To that end, the Commissioner must determine whether the individual would still be disabled if he or she stopped using drugs or alcohol. Drapeau v. Massanari, 255 F.3d 1211, 1214 (10th Cir. 2001). Careful consideration is to be given to periods of abstinence. Salazar, *supra* at 623. If a claimant's mental impairments cannot be separated from the effects of substance abuse, then the claimant's drug and alcohol addiction is not a contributing factor material to the disability determination. Id. at 624. Additionally, in accordance with an explanatory teletype issued by Defendant, "where the record is devoid of any medical or psychological report, opinion, or projection as to the

11

claimant's remaining limitations if she stopped using drugs or alcohol, an ALJ should 'find that DAA is not a contributing factor material to the determination of disability." Id. at 623.

The medical record indicates Claimant was sober for the seventeen day period she was admitted to Green Country. Despite this sobriety, Claimant's GAF assessment only improved from 29 to 32. (Tr. 138, 182). All indications are that Claimant had ceased alcohol use since October of 2004 and methamphetamine use since August of 2004, while maintaining some marijuana use. While recognizing Claimant enjoyed periods of abstinence, the ALJ did not give "careful consideration" to these periods and Claimant's remaining impairment. Moreover, the medical record is devoid of evidence indicating the level of impairment absent Claimant's marijuana use. Indeed, nothing in the record indicates Claimant would no longer suffer from the auditory and visual hallucinations and other psychotic manifestations absent marijuana use or that marijuana use was the cause or exacerbated her documented psychological problems. Finally, an examination of the questioning by the ALJ to the vocational expert does not reveal as clear a demarcation between Claimant's ability to engage in substantial gainful employment absent marijuana use as the ALJ represents in his decision. On remand, the ALJ shall reference specific evidence in the record which demonstrates Claimant's psychological status

absent marijuana use and re-evaluate his position on the materiality of Claimant's drug use upon his RFC assessment.

**Consideration of Contradictory Probative Evidence**

Claimant contends the ALJ failed to discuss Claimant's reduced GAF as well as the medical opinions of Dr. Teegarden with regard to the severity of Claimant's impairment. Claimant's GAF ranged from a low of 29 to 32 during the relevant period - a fact recognized by the ALJ but not discussed. Without doubt, a low GAF is not conclusive on the issue of whether a claimant is unable to perform the necessary functions of employment. "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning. Langley v. Barnhart, 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004). The Tenth Circuit through a series of unpublished decisions has made it clear that the failure to discuss a GAF alone is insufficient to reverse an ALJ's determination of non-disability. *See*, Lee v. Barnhart, 2004 WL 2810224, 3 (10th Cir. (Okla.)); Eden v. Barnhart, 2004 WL 2051382, 2 (10th Cir. (Okla.)); Lopez v. Barnhart, 2003 WL 22351956, 2 (10th Cir. (N.M.)). The foundation for this statement is the possibility that the resulting impairment may only relate to the claimant's social rather than occupational sphere. Lee, *supra* at 3. However, a GAF of 50 or less does suggest an inability to keep a job. Id. citing Oslin v. Barnhart, 2003 WL 21666675, 3

(10th Cir. (Okla.)). Specifically, the DSM-IV-TR, explains that a GAF score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, inability to keep a job)." Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000). A GAF of between 31 and 40 indicates "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (e.g., depressed person avoids friends, neglects family, and is unable to work . . . ." while a GAF between 41 and 50 encompasses a person who shows "[s]erious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job)." Id. A GAF of between 21 and 30 indicates "[b]ehavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home or friends)." Given the fact Claimant's GAF has fallen within these categories which directly conflict with the ALJ's finding Claimant

14

can work with supervisors and coworkers, the ALJ will be required to explain his apparent but unexplained rejection of these assessments.

Additionally, the ALJ failed to explain the rejection of the opinions of Dr. Jennings and Dr. Teegarden with regard to the effect of Claimant's psychological impairments upon her employment. These physicians consistently maintained Claimant was not able to work because of her condition – without regard to the added problem of Claimant's marijuana use. Yet, the ALJ ignored or only made passing reference to these opinions in arriving at his decision. On remand, the ALJ shall properly consider these opinions and state the weight afforded to each and any reason for their rejection.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Order.

DATED this 19th day of June, 2009.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE